UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*

RACHEL SPECTOR,          :
    Plaintiff            :      NO. 3:01-CV-1955(EBB)
                         :
    v.                   :
                         :
                         :
EXPERIAN INFORMATION SERVICES :
INC. ET. AL.             :
    Defendants           :

## INTRODUCTION

Plaintiff Rachel Spector ("plaintiff" or "Spector") brings this action against defendant Wachovia Bank Card Services for violating the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 et seq., the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-11a et seq., the Consumer Credit Reports Act ("CCRA"), Conn. Gen. Stat. §36a-695, common law negligence, and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691. Plaintiff alleges that Wachovia violated the FCRA for failing to comply with its obligations to properly investigate her consumer dispute, and now moves for partial summary judgment as to the FCRA claim. In response, Wachovia has cross-moved for summary judgment. For the reasons set forth below, the court grants defendant's motion for summary judgment and denies plaintiff's partial motion for summary judgment as moot.

## BACKGROUND

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on,

this Motion.  The facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and the exhibits attached to their respective memoranda.

In March, 2001, plaintiff's Husband, Dr. William Spector, filed a Chapter 7 bankruptcy and received a discharge in June, 2001.  One of the accounts Dr. Spector listed and discharged in bankruptcy was a Wachovia credit card account.  Dr. Spector has maintained a Wachovia credit card account since 1992.  When he applied for the card, he requested that his wife be included as an authorized user of the Wachovia card.  (Affidavit of William Spector at ¶5).  The account was opened on or about January 26, 1993.  (Declaration of Scheuerman at 1).  Currently in dispute is whether plaintiff was merely an authorized user or an actual co-obligor of the Account.  Plaintiff and her husband assert that she was only an authorized user of the account.  However, on the Schedule F of his bankruptcy petition, Dr. Spector checked the co-debtor box next to his Wachovia Account. (Dkt. No. 98).  In addition, on Schedule H, Dr. Spector listed his wife, the plaintiff, as a co-debtor for four creditors, including Wachovia Bank. (Id.)  Defendant Wachovia has not been able to verify how or precisely when plaintiff's status changed in their records from authorized user to a co-obligor, due to the fact that Wachovia sold all of its consumer credit card accounts to First USA Bank in or about July 2001.  As a result, they are no longer

2

in possession of many documents and records concerning plaintiff's credit card account.  In addition, Wachovia converted its computer system in 1998, making old data inaccessible.  Most of the employees that worked for Wachovia in their credit services department are also no longer employed with the company.  Therefore, there is no direct evidence on the record regarding the manner in which plaintiff's status on the account was changed from authorized user to joint-obligor status.  Mr. Scheuerman, a Senior Vice President of Wachovia from 1991 to 2002, explained in his affidavit various ways in which plaintiff's account holder status could have changed according to regular business practices at Wachovia.  For example, he explained that plaintiff could have become a co-obligor during a solicitation of a promotion or during a balance transfer. Scheuerman clarified that because plaintiff was an authorized user of the account, Wachovia was authorized to adjust her status to that of joint obligor over the phone without any paperwork.  (Declaration of Michael Scheuerman at 6).

Wachovia was able to access plaintiff's year-end account records by accessing the master year-end backup files for plaintiff's account from 1993 - 2001. (Affidavit of Tim Huffstetler at 3).  The 1993 year-end file reflects that plaintiff's status in December, 1993 was recorded as a joint-obligor to the account.  Wachovia also possessed plaintiff's

3

social security number at the same time, which, according to Mr. Scheureman, is further indication that she was an obligor of the account because it was the ordinary business practice of Wachovia to request only the social security numbers of individuals who agreed to obligate themselves on an account.  (Declaration of Michael Scheuerman at 3).  Defendant also produced a May, 1995 Wachovia credit card bill in the name of both William B. Spector and Rachel S. Spector.  (Declaration of Michael Scheuerman, Exh. B).  According to Mr. Scheuerman, Wachovia's regular practice is to direct statements only to those individuals who were obligated on an account, and that neither plaintiff nor her husband ever objected to the bills being addressed to both of them. (Id. at ¶16).

In 2001, after her husband filed for bankruptcy, plaintiff complained to three consumer reporting agencies, Equifax, Experian and Trans Union, that her credit report was inaccurate as a result of Wachovia providing allegedly false information to these agencies.  (Pl.'s Affidavit).  Plaintiff claims that Wachovia incorrectly reported the credit card as an individual account and that the account debt was included in a bankruptcy. Experian issued credit reports in April, May, July, November and December 2001, listing the status of all of plaintiff's credit cards, including her Wachovia account.  Under the "Responsibility" category the report states that the Wachovia

4

account is "individual," and under "Status Details" the report indicates, "Status: Petition for Chapter 7 Bankruptcy/Past due 120 days."

Plaintiff alleges that Wachovia did not properly investigate her consumer disputes or report to credit bureaus the results of investigating her disputes as obligated under the FCRA, because it did not change either the bankruptcy status or the individual responsibility notation on the report. (Pl's Local Rule 56(a)2 statement.) The record reflects that in May of 2001, Wachovia received two Automated Consumer Dispute Verifications (ACDV) from Experian Information Solutions and Trans Union regarding plaintiff's claim that she was not a co-obligor on the account. After receiving such notice, Wachovia confirmed to Trans Union "verified as reported" and to Experian and Equifax, the notation "Debt included in Bankruptcy Chapter 7." (Pl.'s 56(a)(1) Statement at 2; Responses to First Set of Interrogatories by Defendant Wachovia Bank Card Services at 1-2; Defendant's Local 56(a)(2) Statement). Again in or around December 11, 2001, Wachovia provided Experian with an ACDV Response Activity Report which indicated that "debt was included in bankruptcy." (Affidavit of Wilhelmina Strawther, at ¶16, 29). Wachovia asserts that the verification only pertains to plaintiff's dispute regarding her status as a co-obligor, and denies ever listing plaintiff's credit card as an individual account or

5

verifying to Experian that the credit card was an individual account. (Def.'s 56(a)(2) Statement at 3). Mr. Scheureman also attests that he is unaware of any industry practice of reading credit reports that would cause a creditor to assume that plaintiff, a joint obligor on the Wachovia account, had herself filed bankruptcy, based on the notation that "debt was included in bankruptcy." (Declaration of Michael Scheuerman at ¶ 9-13).

Because Wachovia sold its credit card services to First Union in July, 2001, no employee can testify as to the precise steps taken by Wachovia to investigate plaintiff's dispute. Mr. Scheuerman described the ordinary business procedures taken to investigate consumer disputes by the Consumer Dispute Verification (CDV) Unit, and avers that there is no reason to believe Wachovia deviated from this practice with respect to plaintiff's dispute. (Declaration of Michael Scheuerman at 3-5). Wachovia's normal business practice is to review all available account records and account notes, which are recordings of occurrences of account activity on particular dates entered into the computer at the approximate time of the account activity. Id. To verify an individual's account status, Wachovia's normal business practice is to refer to the "credit association" of the particular individual, which identifies the individual's obligation or status on the account, and whether Wachovia possessed the individual's social security number. The account

6

notes on plaintiff's account reflected that plaintiff had been
designated a credit association of "2", which is an indicator
that she was jointly obligated on the Account.  The account notes
also included plaintiff's social security number, which would
indicate to an investigating employee that the individual was an
obligor on the account.  (Id. at 3).  Based on the information in
the account and the account notes, Mr. Scheuerman averred that
"an employee reviewing Wachovia's regularly maintained business
records upon receipt of Plaintiff's dispute would have reasonably
concluded that the plaintiff had become a co-obligor on the
account at some point after the initial application...[and that]
the Account balance was a debt that was included in the
bankruptcy.")  (Id. at 5).

     While admitting that Wachovia followed its "usual
procedures" in investigating her complaint, plaintiff asserts
that such procedures were "utterly inadequate" and caused her
emotional distress, pain and suffering.  Plaintiff does not
allege actual economic loss as a result of Wachovia's conduct,
but charges that she suffered "undue stress and heart break and
sleeplessness, a lot of unnecessary paperwork and, most of all,
damaging [her] credit." (Pl.'s Deposition at 90).  Plaintiff
could not, however, verify that the information in dispute on her
report has adversely affected her credit rating or that anyone
thought the plaintiff herself had filed bankruptcy as a result of

7

Wachovia's reporting her credit card debt was involved in a bankruptcy. (Id. at 40) Plaintiff was denied a Best Buy Visa/MasterCard she applied for while in a Best Buy store in the spring of 2002. However, she was given instead a Best Buy Credit Card which allowed her to buy the item she went to the store to purchase. (Id. at 42-47). Plaintiff also paid off the credit card debt within the first six months and, therefore, was not charged any interest. (Id. at 45). Plaintiff was not told the reason she was only given a Best Buy credit card and not a Best Buy Visa/MasterCard other than that the latter was denied. Id. at 48. At the time of her deposition, plaintiff had not attempted to apply for any other forms of credit since July of 2001. (Id. at 47).

## Legal Analysis

### I. Cross Motions to Strike

As an initial matter, the parties have cross moved to strike affidavits submitted in support of their respective motions for summary judgment. The principles concerning admissibility of evidence do not change on a motion for summary judgment. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); Newport Elecs. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay or conclusory statements, are incomplete, or

.    8

have not been properly authenticated. *See, e.g.* Hollander v.
American Cyanamid Co., 999 F. Supp. 252, 255-56 (D.Conn. 1998);
Dedyo v. Baker Engineering New York, Inc., 1998 U.S. Dist. LEXIS
132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).

A. Plaintiff's Motion to Strike Declarations by Huffstetler
and Scheuerman

Plaintiff moves to strike the declarations of Tim
Huffstetler and Michael Scheuerman, two Wachovia employees, as
inadmissible under Fed. R. Civ. P. 56(e). Tim Huffstetler, the
Senior Manager in the Systems Development Group of Wachovia,
signed a sworn declaration explaining how he retrieved a back-up
master file of plaintiff's year-end Account reports at Wachovia.
(Declaration of Tim Huffstetler at 1-2). He did so based on his
"personal knowledge" of Wachovia and "technical familiarity with
the practices and procedure of Wachovia's information systems."
(Id.) Plaintiff asserts that, because this file was retrieved
after litigation began, it is therefore inadmissible in court
because it was "prepared for litigation" in violation of Fed. R.
Civ. P. 56(e). (Mem. In support of Pl.'s Motion to Strike at 1).
In contradistinction, this court finds the declaration of Tim
Huffstetler explaining how he recovered the year-end account
reports from Wachovia's computer system are statements regarding
business records kept in the ordinary course of business, and
therefore his testimony and the documents are admissible under

9

Fed. R. Evid. 803(6). The mere fact that the records were retrieved from a complex computer storage system after the litigation began does not make these records documents prepared for litigation. Furthermore, this court finds, as Senior Manager of Systems Development at Wachovia, Huffstetler is qualified to speak as to the purpose and operation of the backup master file system, and did not make speculative statements by explaining his understanding of how and why Wachovia maintains this back-up file system.

This court also rejects plaintiff's challenge to declarations made by Michael Scheuerman, the Senior Vice President of Wachovia during the time of the events in question. Mr. Scheuerman described the regular business practices of Wachovia with respect to investigating consumer disputes and the maintenance of account notes of an account with joint obligor status. Mr Scheuerman also explained the notes that had been recorded with respect to plaintiff's account, indicating Wachovia had designated plaintiff as jointly obligated on her husband's account. The declarations of Scheuerman and Huffstetler, high ranking employees of Wachovia, provide a sufficient basis for finding personal knowledge and competence to testify regarding the general business practices and procedures of Wachovia under Fed. R. Civ. P. 56(e). Therefore, such declarations are admissible

for purposes of these summary judgment motions.

B. Defendant's Motion to Strike Plaintiff's Affidavits

Defendant moves to strike portions of Plaintiff's affidavit submitted in support of her motion for partial summary judgment, on the grounds that it contains hearsay and vague statements, as well as references to documents not identified in the affidavit. Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in a Rule 56 affidavit accompanying a summary judgment motion. H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991). Paragraphs Two and Eight of plaintiff's affidavit make references that she "learned" and "confirmed" information regarding her credit reports, but do not identify the source of her information. Paragraph Eight also states that "I also learned that Wachovia did not respond to my disputes at all." (Pl.'s Affidavit at 2). Similarly, Paragraph Seven states that Experian, one of the credit bureaus and previously a co-defendant in this lawsuit, "confirmed" that Wachovia had verified disputed information. While this court agrees that plaintiff's affidavit is inartfully drafted, these statements are not hearsay because they are relied on only as evidence of what was said or reported

11

to plaintiff, not as evidence of the truth of any statement or
record made. Fed. R. Civ. P. 801(c); New York v. St. Francis
Hosp., 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000).  Further, because
she has also submitted supporting evidence including credit
reports and an affidavit from a Custodian of records at Experian,
this court relies primarily on the evidence on the record with
respect to what information was reported and verified.

Defendant Wachovia also moves to strike Paragraphs Three and
Five of plaintiff's affidavit pursuant to Fed. R. Evid. 1002
because she makes a reference to "reports" without specifying the
particular documents or submitting them as evidence.  In her
affidavit, paragraph three states that "[t]he adverse information
included reports that my 'individual' accounts had been
discharged in bankruptcy." Paragraph five states that "In 2001, I
disputed the items which included the false adverse information
with all three major credit bureaus." (Dkt. #84).  While these
statements may be vague taken on their own, when read in
connection with the copies of plaintiff's credit report and
consumer dispute verification paperwork submitted with her
affidavit, the reference to the report is clarified.  Further,
the Best Evidence rule, Fed. R. Evid. 1002, does not apply
because plaintiff's statement is not an attempt to  prove the
content of a writing.  See Dean v. New York Marriott Fin. Ctr.
Hotel & Marriott Int'l, 1998 U.S. Dist. LEXIS 13957, 12-13 (U.S.

Dist. , 1998)   Accordingly, this court finds these statements admissible for consideration on summary judgment.  However, plaintiff's statements as to the contents of these reports will be disregarded to the extent that they contradict what the records themselves reveal.  Defendant's Motion to Strike is therefore denied in its entirety.

## II. Summary Judgment

### A. The Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). *See also* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).  If the moving party meets its burden of identifying those portions of the record that it believes demonstrate the absence of genuine issues of material fact, "the non-moving party must, under Federal Rule of Civil Procedure 56, demonstrate to the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit Info. Co.</u>, 970 F.2d 1110, 1112 (2d Cir. 1992).

To meet its burden and avoid summary judgment, the nonmoving party "must come forward with affirmative evidence showing a

genuine issue of material fact exists for trial." <u>Chandra Corp.</u>
<u>v. Val-Ex, Inc.</u>, No.99-9061, 2001 WL 669252, at *2 (S.D.N.Y. Jun.
14, 2002) (citing <u>Celotex v. Catrett</u>, 477 U.S. 317, 324 (1986)).
The court is mandated to "resolve all ambiguities and draw all
inferences in favor of the nonmoving party...." <u>Aldrich v.</u>
<u>Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2nd. Cir.), _cert._
_denied_ 502 U.S. 849 (1991). "Only when reasonable minds could not
differ as to the import of the evidence is summary judgment
proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d. Cir.), _cert._
_denied_, 502 U.S. 849 (1991).

"[T]he mere existence of <u>some</u> alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no <u>genuine</u> issue of <u>material</u> fact...Only disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment. Factual disputes that are irrelevant or unnecessary
will not be counted." <u>Liberty Lobby, Inc.</u>, 477 U.S. at 247-48.
(emphasis in original). Nonetheless, summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
nonmoving party. <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29,
37 (2d Cir. 1994). The Second Circuit has repeatedly noted that
"[a]s a general rule, all ambiguities and inferences to be drawn

14

from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988) (internal citations omitted) citing Celotex v. Catrett, 477 U.S. at 330, n.2 (Brennan, J., dissenting) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59(1970)); Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992). When examining the record before it to see if there are any genuine issues of material fact, this court's focus is on issue finding, not on issue-resolution. The district court's role is not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the fact-finder at trial. See Liberty Lobby, Inc., 477 U.S. at 249.

B. Standard Applied

The FCRA imposes a duty on entities responsible for furnishing information to consumer reporting agencies following the receipt of notice of a dispute over the accuracy of information provided by that furnisher to the consumer reporting agency. 15 U.S.C. § 1681s-2(b) states that, after receiving notice of a dispute from a consumer reporting agency under 15 U.S.C. § 1681(a)(2), the furnisher shall:

(A) conduct an investigation with respect to the disputed information;

15

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

Plaintiff claims that defendant Wachovia is liable under 15 U.S.C. § 1681o, for negligently failing to comply with 15 U.S.C. § 1681s-2(b), or under 15 U.S.C. § 1681n, for willful non-compliance with 15 U.S.C. § 1681s-2(b). This court addresses both claims below.

## 1. Negligent Failure to Comply with FCRA

15 U.S.C. § 1681o provides:

> Any person who is negligent in failing to comply with any requirement imposed under this sub-chapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

In order to survive a summary judgment motion on a claim of negligent violation of the FCRA, a plaintiff must provide some evidence from which a reasonable fact-finder could conclude that she suffered actual damages as a result of defendant's actions. See McMillan v. Experian, 170 F. Supp. 2d 278, 284 (D. Conn.

16

2001).

Defendant Wachovia cross-moved for summary judgment based on the fact that plaintiff has failed to come forward with evidence of actual damages caused by Wachovia's alleged negligent or willful noncompliance. Because Wachovia points to the absence of such evidence, the burden therefore shifts to the non-moving plaintiff to demonstrate the existence of a material factual dispute as to the existence of damages. *See* <u>Celotex</u>, 477 U.S. at 323-24; <u>LaBounty v. Coughlin</u>, 137 F.3d 68, 72 (2d Cir. 1998). This court finds plaintiff failed to meet her burden of proving she has sustained damages as a result of Wachovia's indication that her credit card account was part of a bankruptcy proceeding.

Preliminarily, this court rejects plaintiff's contention that the question of damages is "inconsequential because emotional distress is recoverable, as are punitive damages." (Pl.'s Local Rule 56(a)2 Statement). While plaintiff is correct that damages under FCRA "may include humiliation and mental distress even in the absence of out-of-pocket expenses," the Second Circuit has placed clear limitations on a plaintiff's ability to recover for pain and suffering when no economic harm is alleged. In <u>Casella v. Equifax Credit Info. Servs.</u>, 56 F.3d 469, 474-475 (2d Cir. 1995), the Court affirmed the district court's finding that the plaintiff was not entitled to pain and suffering damages because he had failed to show that his

emotional distress was caused by the defendant, as opposed to other creditors or credit bureau companies. *See also* <u>McMillan v. Experian</u>, 170 F. Supp. 2d at 286 ("Casella stands for the proposition that recovery under the FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of potentially damaging credit information is insufficient FCRA damages.").

Even interpreting the record in favor of the plaintiff, she has not submitted any evidence that she suffered any economic loss as a result of the conduct of Wachovia. Plaintiff attempted to show that other creditors "saw the inaccurate report after Wachovia's investigation" by citing to the Affidavit of Wilhelmina Strawther, a custodian of records for the Consumer Affairs Special Services Department of Experian. However, the portions of Strawther's affidavit plaintiff points to demonstrate that Experian's records show a company by the name of Cohoes Fashions received a plaintiff's credit report on March 15, 2000. (Affidavit of Strawther at 6). This credit check therefore occurred a year before Dr. Spector filed for Bankruptcy and before plaintiff disputed the alleged inaccuracy on her account, and therefore any emotional damage caused by such inquiry cannot have been caused by Wachovia's alleged failure to adequately investigate and respond to plaintiff's consumer dispute.

18

Plaintiff also provides this court with no information with respect to Cohoes Fashion, failing to show what information this company received, how they interpreted such reports, and whether Cohoes Fashions relied on any allegedly inaccurate information from Wachovia.

When asked specifically in her deposition whether she could identify anybody who, she was aware, had read the phrase "included in bankruptcy" on her credit report as meaning that she herself had filed bankruptcy, plaintiff was unable to identify anyone. (Pl.'s Deposition at 38-9). Further, the only denial of financial services plaintiff could point to was when she attempted to sign up for a Best Buy MasterCard/Visa while shopping at Best Buy in the Spring of 2002. (Id. at 42). Plaintiff explained that, while she was not given a Best Buy Visa/MasterCard card, she was given a Best Buy credit card which allowed her to buy the items she had intended to buy that day. Plaintiff could not recall the reason she had been denied the Visa/MasterCard, or whether anything led her to believe that she had been denied credit because of something Wachovia had done. She received no information about what type of credit report they relied on, if any.[1] (Id. at 85). Finally, plaintiff stated at

---

[1] Plaintiff brought similar claims against numerous other credit reporting agencies and financial institutions alleging they falsely reported her credit information. Plaintiff has submitted no evidence that Best Buy relied on information Wachovia provided, as opposed to any of the numerous other

19

her deposition that she did not recall applying for any other
forms of credit aside from the Best Buy Card since the dispute
over her Wachovia card arose.  This court finds plaintiff's
mental anguish, on its own, without evidence of a denial of
credit or of any third parties viewing or relying on the
information Wachovia provided regarding the status of her credit
card, is not enough to survive summary judgment. *Compare* McMillan
v. Experian, 170 F. Supp. 2d 278, 285 (D. Conn. 2001)(denying
summary judgment on damages issue because a reasonable jury could
conclude that a denial of insurance resulted from misinformation
supplied by the defendant) *and* Spector v. Trans Union LLC First
USA Bank, N.A., 301 F. Supp. 2d 231, 2004 U.S. Dist. LEXIS 1386
(D. Conn. 2004)(finding summary judgment inappropriate because
evidence was submitted that creditors were aware of alleged
inaccurate information).  This court therefore concludes that
plaintiff failed to adduce any evidence of actual damages
sustained as a result of defendant's activities, as required by
FCRA, and summary judgment is granted for defendant Wachovia.

   Because the court has found that plaintiff failed to meet
her burden of proving damages as required by the FCRA, it is
unnecessary to address the issue of whether Wachovia was indeed
negligently non-compliant for failing to change plaintiff's

---

financial institutions which reported the same information as
Wachovia.  *See* Spector v. Trans Union LLC, 301 F. Supp. 2d 231
(D. Conn. 2004).

status on her credit report as a co-obligor and erase all information pertaining to her husband's bankruptcy filing.

## II. Willful Non-compliance

Plaintiff has also failed to present any evidence of willful noncompliance with any provision of the FCRA. See 15 U.S.C. § 1681n. Under the FCRA, "any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n. Plaintiff is correct that punitive damages may be available even where a plaintiff has sustained no actual damages. See 15 U.S.C. § 1681n(2); Casella, 56 F.3d at 476; Boothe v. TRW Credit Data, 557 F. Supp. 66, 71-72 (S.D.N.Y. 1982). However, to survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating "conscious disregard" or "deliberate and purposeful" actions necessary to make out a claim for willful noncompliance under the FCRA. 56 F.3d at 476 (quoting Pinner v. Schmidt, 805 F.2d 1258, 1263 (2d Cir. 1986)("[i]n each case where punitive damages have been allowed the defendant's conduct involved willful misrepresentations or concealments.") Based on the record before this court, there is no evidence that Wachovia engaged in deliberate or reckless conduct that would warrant

21

punitive damages.  In fact, plaintiff admits that "Wachovia

followed its normal procedure in responding to plaintiff's

dispute and has no information indicative of any departure from

normal procedures." (Pl.'s Rule 56(a)(1) Statement).

Accordingly, summary judgment is also granted in favor of

defendants on plaintiff's claim of willful non-compliance.

Conclusion

Plaintiff's Motion to Strike Declarations [Dkt. No. 100] is

Denied.  Defendant's Motion to Strike Affidavit  [Dkt. No. 91] is

Denied.  Defendant's Cross Motion for Summary Judgment on the

FCRA claim is granted [Dkt. No. 93] and Plaintiff's Partial

Motion for Summary Judgment against Wachovia [Dkt. No. 81] is

denied as moot.

SO ORDERED

/ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this _2__ day of June, 2004.

22